# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NATHANIEL TODD (#2009-0024919), ) | |
| ) | |
| Plaintiff, ) | Case No. 09 C 4611 |
| ) | |
| v. ) | Judge Amy J. St. Eve |
| ) | |
| THOMAS DART, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Nathaniel Todd, currently a pretrial detainee at Cook County Jail, filed suit, *pro se*, against Defendants – Cook County Sheriff Thomas Dart and Aramark Food Service – alleging that he has been fed the same meals, three times a day, seven days a week, resulting in systemic malnourishment. Plaintiff also alleges that he has found foreign objects in his food. Presently before the Court are: (1) Defendants' motion for summary judgment, (2) Plaintiff's "motion for petition to prosecute," (3) Plaintiff's "motion of dispositive motions," (4) Defendants' motion to strike Plaintiff's motion of dispositive motions, and (5) Plaintiff's "motion in regarding to past and present filing of Local Rule Fed. R. Civ. P. 56(5)." For the reasons stated in this order: (1) Defendants' motion for summary judgment is granted, (2) Plaintiff's "motion for petition to prosecute" is denied, (3) Plaintiff's motion of dispositive motions is stricken, (4) Defendants' motion to strike Plaintiff's motion of dispositive motions is granted, and (5) Plaintiff's "motion in regarding to past and present filing of Local Rule Fed. R. Civ. P. 56(5)" is denied.

## LEGAL STANDARD

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on

file, and affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party, however, cannot defeat summary judgment by relying on unsubstantiated facts or by merely resting on its pleadings. *See Hemsworth, II v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001). Instead, the party that bears the burden of proof on an issue must affirmatively demonstrate, with admissible evidence, that a genuine issue of material fact exists that requires a trial. *See Hemsworth*, 476 F.3d at 490.

When Defendants filed their motion for summary judgment, they included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). This notice clearly sets forth the requirements of Local Rule 56.1. In particular, the notice explains that Plaintiff's response must comply with Federal Rule of Civil Procedure 56(e) and Local Rule 56.1.

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and

> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may require strict compliance with Local Rule 56.1. *See Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs"). Further, the court may disregard statements and responses that do not comply with Local Rule 56.1. *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005).

Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is nonetheless required. *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[R]ules apply to uncounseled litigants and must be enforced"); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994); *Fischer v. Ameritech*, No. 98 C 7470, 2002 WL 1949726, *4 (N.D. Ill. Aug. 23, 2002) (Pallmeyer, J.).

Plaintiff filed a response to Defendants' motion. The response, however, does not address the Defendants' proposed undisputed facts. Accordingly, Defendants' proposed undisputed facts are deemed admitted. *See Chelios v. Heavener*, 520 F.3d 678, 687 (7th Cir. 2008); L.R. 56.1(b)(3)(B).

Plaintiff also filed a "motion for petition to prosecute" in which Plaintiff seeks to "prosecute" a section 1983 claim of "aggravated battery" of his food/meals for serving him

"food loaf while not under behavior program." Plaintiff's motion is denied as no such claim is cognizable under the law.

In addition, Plaintiff filed a "motion of dispositive motions with supportive memorandum." This motion appears to be Plaintiff's motion for summary judgment. Defendants have moved to strike the motion because it fails to comply with Local Rule 56.1 (N.D. Ill.).

Rule 56.1(a) requires a party moving for summary judgment to file a statement of material facts that the moving party contends there is no genuine issue and that entitle the movant to judgment as a matter of law. L.R. 56.1(a)(1)(3). The statements must include a specific reference to the affidavits, parts of the record, and other supporting materials relied upon for such statements. L.R. 56.1(a). "Failure to submit such a statement constitutes grounds for denial of the motion." L.R. 56.1(a). Plaintiff fails to provide any proposed statement of material facts in support of his motion. Accordingly, Defendants' motion to strike is granted.

Plaintiff also filed a "motion in regarding to past and present filing of Local Rule Fed. R. Civ. P. 56(5)." The "motion" consists of a copy of a June 27, 2010, grievance that was processed as a response regarding Plaintiff's request to be served properly prepared food trays. The response states that production staff has not reported any foreign objects in the meals and that they will continue to monitor and that plastic is not used during the production or cooking of chicken (apparently, an aspect of the grievance/request). The remainder of the motion consists of multiple affidavits by Plaintiff. The affidavits include: finding a hair in his food on June 17, 2010; staff taking court documents from detainee's property boxes; "opening cells doors and not properly report such incidents;" legal conclusions that he has proven his claims beyond a reasonable doubt; the use of meat loaf being served as punishment; and tampering with his mail.

4

It appears that Plaintiff has filed these documents in opposition to Defendants' motion and proposed undisputed facts. Plaintiff, however, does not identify, nor can the Court discern, which documents controvert which of the Defendants' proposed undisputed facts or arguments within their motion for summary judgment. Furthermore, the documents do not appear to add any additional facts to those addressed below. Accordingly, Plaintiff's "motion in regarding to past and present filing of Local Rule Fed. R. Civ. P. 56(5)" is denied.

**FACTS**

Plaintiff is a pretrial detainee at the Cook County Jail (CCJ). (Defs.' 56.1(a)(3) Statement ¶ 1.) Thomas Dart is the Sheriff of Cook County and Aramark provides food service to CCJ. (Id., ¶¶ 2-3.)

Plaintiff has been a detainee at CCJ since February 28, 2009. Plaintiff was first housed in Division 5; moved to Division 6 from March 20, 2009, to January 5, 2010; moved to Division 11 on January 5, 2010; moved to Division 2 for a approximately a week thereafter; and then moved to Division 10. (Defs.' 56.1(a)(3) Statement ¶7.) All of the Divisions serve food to the detainees in the same manner. (Id., ¶ 9.) Plaintiff has never served on kitchen duty while being housed at CCJ. (Id., ¶ 10.)

Plaintiff received a regular diet tray when he was initially housed at CCJ. (Defs.' 56.1(a)(3) Statement ¶ 11.) On August 22, 2009, Plaintiff was diagnosed with diabetes. Plaintiff takes 850 milligrams of Metormin medication, twice daily, for his diabetes. (Id., ¶ 12.) The doctor also prescribed Plaintiff a diabetic diet, and, as a result, Plaintiff has been on a diabetic meal since September of 2009. (Id., ¶ 13.) Since being on a diabetic diet, Plaintiff only receives regular meals (non-diabetic) when he goes to court. (Id., ¶ 18.) Plaintiff has not lost any weight since his detention at CCJ. (Id., ¶ 14.) Furthermore, Plaintiff has never been refused a meal.

5

(Id., ¶ 17.)

The menu at CCJ is chosen by Aramark's clients, with the help of Aramark's employees. Aramark employees order the food, and handle the delivery and storage of the food. Although Aramark employees prepare the meals for CCJ, inmates help with the meal preparation. (Defs.' 56.1(a)(3) Statement ¶ 15.) Detainees receive three meals a day. CCJ serves all three meals on a tray that is prepared in the central kitchen located at CCJ. After the food is prepared, it is brought from the central kitchen to each division by an elevator, and the correctional officers – with the assistance of some detainees – distribute the trays to the inmates. The deputy sheriff or officer on duty determines when the food is served. (Id., ¶ 16.)

Plaintiff is served three meals per day – breakfast, lunch and dinner. (Defs.' 56.1(a)(3) Statement ¶ 20.) Plaintiff is generally served lunch and dinner in the day room. If there is a lockdown, however, these meals are served in his cell. (Id., ¶ 19.) An officer and two or three inmates deliver breakfast to Plaintiff in his cell. The officer opens the cell door and the inmate brings the meal to the door. (Id., ¶ 20.) Plaintiff receives his breakfast and dinner on hard plastic trays that are approximately twelve inches long. (Id., ¶ 22.) They generally serve Plaintiff eggs and/or meat, oatmeal or grits, three pieces of wheat bread and skim milk for breakfast. (Id., ¶ 23.)

Similarly, an officer or inmates deliver Plaintiff his lunch. The lunch is served on a Styrofoam tray, wrapped in pre-sealed plastic. Sometimes, Plaintiff receives his lunch tray with the plastic wrap torn and re-wrapped. Plaintiff does not believe, however, that the detainees who issue the lunch trays and the detainees who deliver the lunch trays intentionally break the plastic wrap. (Id., ¶ 24.) Plaintiff generally receives two lunch meats, two apples, bread, and milk for lunch. (Id., ¶ 25.) Plaintiff usually receives a piece of meat, applesauce, bread, lettuce, carrots,

6

green beans, and milk for dinner. (Id., ¶ 26.) In addition, Plaintiff receives a separate bag of food with each evening mail that only diabetic detainees receive so that he can take his medications. The extra food includes milk, two pieces of bread, one slice of meat, and an apple. (Id., ¶ 29.)

A detainee can file a grievance for complaints involving food services and food quality. A nutritionist usually receives an inmate's complaints for Aramark. Aramark investigates all written complaints and provides a written response. (Defs.' 56.1(a)(3) Statement ¶ 30.) Upon receiving a complaint, an Aramark employee conducts an investigation that generally consists of contacting a food services manager to discuss the problem and learn the details of what occurred, attempting to find out if the incident actually occurred, determining if the tray or food item was returned, and then determining whether further investigation or employee retraining is required. (Id., ¶ 32.) Other than the grievance process, when a detainee complains about his food, an officer calls the food service department and requests a replacement. Aramark provides a replacement if one is available. However, if the complaint is serious in nature, the officer completes an "unusual occurrence report" and may return the product for investigation and replacement. (Id., ¶ 31.) Plaintiff is aware that he can complain about his meals by giving a grievance form to a social worker who then provides the grievance for to the sergeant. (Id., ¶ 33.)

Plaintiff claims that in July of 2009, the food he received on his regular diet lunch tray was being mishandled, the meat was too thinly sliced, and that something was wrong with the apples that he received. (Defs.' 56.1(a)(3) Statement ¶ 34.) He also claims that he first noticed that someone was "tampering" with his food on approximately September 22, 2009. (Id., ¶ 35.) Plaintiff believes that either inmates or officers tamper with his food. He does not know,

7

however, who is actually tampering with his food. (Id., ¶ 36.)

Some time between September 10, 2009, through September 18, 2009, Plaintiff found a dead roach sitting on top of his green beans and carrots on his dinner tray. Plaintiff did not eat the roach and dumped the entire meal tray in the toilet. However, Plaintiff placed the roach in a plastic bag and sent it to the District Court. ( Defs.' 56.1(a)(3) Statement ¶ 37.) Plaintiff was not injured as result of seeing the roach. (Id., ¶ 38.) Plaintiff does not recall who prepared the food when he saw the roach. (Id., ¶ 39.) Further, Plaintiff ate his diabetic meal that evening. (Id., ¶ 40.) Plaintiff filed a grievance that same month regarding the roach in his meal. (Id., ¶ 41.)

Plaintiff also claims that he found a hair in his rice that was served with his dinner on September 15, 2009. Plaintiff saved the rice so that he would not have an empty stomach when he took his medications. Plaintiff also sealed the hair in a plastic bag and mailed it to the District Court. (Defs.' 56.1(a)(3) Statement ¶ 42.) Plaintiff told Officer Marino about the hair in his rice but did not make a formal complaint about it. (Id., ¶ 43.) Plaintiff does not know how the hair got into the rice. (Id., ¶ 44.) In addition, Plaintiff did not become ill after he ate his dinner on September 15, 2009. (Id., ¶ 46.)

On November 24, 2009, Plaintiff completed a grievance form requesting that he be taken off of his diabetic diet and placed back on a regular diet because he believed that "people" were taking food from him and tampering with his meal tray, and he did not think that the special diabetic diet worked. Plaintiff signed the grievance on November 30, 2009, and reported his grievance to his social worker on December 7, 2009. Plaintiff received a response to his grievance on December 16, 2009 which referred him to a division physician. (Defs.' 56.1(a)(3) Statement ¶ 55.) Plaintiff did not file an appeal to the response to his grievance. (Id., ¶ 56.)

Plaintiff again found a hair in his rice that was served with his dinner on December 9,

8

2009. Plaintiff had not eaten any part of his meal before he saw the hair. (Defs.' 56.1(a)(3) Statement ¶ 46.) Plaintiff ate the food from his diabetic bag lunch as a substitute for his December 9, 2009, dinner. (Id., ¶ 47.) Plaintiff become nauseous on the evening of December 9, 2009, because he took his medication with inadequate food in his stomach. (Id., ¶ 48.)

Plaintiff found cardboard under his green beans in his meal served at dinner on January 24, 2010. Plaintiff claims that the cardboard was from a pack of matches. Plaintiff did not eat the piece of cardboard and does not know how it got into his food. (Defs.' 56.1(a)(3) Statement 51.) Plaintiff did not get sick on January 24, 2010. (Id., ¶ 52.) However, that same day, Plaintiff went to the medical dorm because, by his own choice, he was not taking his blood pressure medication. Plaintiff learned that he was experiencing stomach pains and bleeding from taking one of his medications on an empty stomach. (Id., ¶ 53.)

On April 2, 2010, Plaintiff filed a grievance requesting that he be served dry bead on his food tray. Plaintiff believes that his bread was becoming soggy because his meal trays would sometimes come with busted milk cartons on the tray. Plaintiff believes that someone handling the trays is either squeezing the milk cartons or stepping on the milk cartons. Plaintiff does not know who is doing either. (Defs.' 56.1(a)(3) Statement ¶ 55.) Plaintiff also claims that he has received bruised apples and thin meat with his meals. (Id., ¶¶ 49-50.)

Plaintiff claims that from June 11, 2009, until January 28, 2010, he spit up blood and spectrum when he awoke. (Defs.' 56.1(a)(3)(1) Statement ¶¶ 57-58.) On January 28, 2010, Plaintiff was prescribed Omeprazole medication for his coughing up blood and he has since stopped coughing up blood. (Id., ¶ 63.) Plaintiff concedes that the reason he was spitting up blood and spectrum was because he chose not to eat because he was receiving the same meals every day. (Id., ¶ 57.) Plaintiff admits that taking his pain medications before he received his

9

food trays caused his stomach pains. Plaintiff is able to select and determine the exact time he takes his medications. (Id., ¶ 58.)

Plaintiff also claims that he is being malnourished because he is not getting a variety of minerals and vitamins that he needs because he receives the same meal trays every other day. (Defs.' 56.1(a)(3) Statement ¶ 60.)

Plaintiff was never told by a doctor that he had food poisoning, was never tested for food poisoning, was never asked to be tested for food poisoning, and was never diagnosed as having contracted food poisoning as result of eating the food at Cook County Jail. (Id., ¶ 62.)

## ANALYSIS

A pretrial detainee's claim of unconstitutional conditions of confinement is analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment. *See Anderson v. Gutschenritter*, 836 F.2d 346, 348-49 (7th Cir. 1988). The relevant question for a due process analysis, however, is whether the challenged condition of confinement constitutes punishment in the same sense as punishment under the Eighth Amendment. *See Block v. Rutherford*, 486 U.S. 576, 583 (1984); *Tesch v. County of Green Lake*, 157 F.3d 465, 473 (7th Cir. 1998).

A two-prong analysis is utilized in determining whether the conditions of confinement reach unconstitutional proportions. *See Wilson v. Seiter*, 501 U.S. 294, 299-302 (1991). The analysis consists of both an objective and subjective component. *Wilson*, 501 U.S. at 299-302. If either the objective or subjective component is not satisfied, a plaintiff cannot prevail on his conditions of confinement claim. *See Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994).

**I.    Plaintiff Cannot Satisfy the Objective Element of the Constitutional Inquiry**

To satisfy the objective component, a detainee must demonstrate that "he is incarcerated

10

under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)(citation omitted). The objective component requires the court to determine whether the alleged deprivation – the condition itself – was sufficiently serious to rise to the level of a constitutional violation. *Wilson*, 501 U.S. at 299-302. The Constitution "does not mandate comfortable prisons," and only those deprivations denying the "minimal civilized measures of life's necessities" are serious enough to implicate the Constitution. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also, Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). A detainee is entitled to a healthy environment that includes "providing nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). However, "[i]nmates cannot expect the amenities, conveniences and services of a good hotel . . . ." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988).

Plaintiff has failed to raise a genuine issue of material fact that the meals he has been served while a detainee have posed a substantial risk of serious harm. *See Farmer*, 511 U.S. at 834. Plaintiff has not presented evidence that the meals were not nutritious, and Plaintiff has failed to offer any evidence that he became ill as a result of ingesting the food. While he complained of sometimes receiving soggy bread, thinly sliced meat, and bruised fruit, these imperfections did not cause him any risk of serious harm or immediate danger to his health. Furthermore, the sporadic finding of a foreign object – a roach, two hairs, and a piece of cardboard – over a five month period, did not cause Plaintiff any risk of serious harm. Plaintiff was still able to eat his meals, did not ingest the foreign objects, and did not get ill from the objects. Lastly, Plaintiff's complaint (and argument in his response to Defendants' motion for summary judgment) regarding being served the same "loaf" every day of the week fails to

demonstrate any serious risk of injury. While Plaintiff may dislike the menu at CCJ, he has not demonstrated that the routine meals are not nutritious or that they caused him any serious risk of injury.

Although Plaintiff did suffer from occasional stomach pains and spit up blood, he has failed to offer any evidence that these ailments were casually related to the food he was served. In fact, he testified that he suffered these ailments as reactions to the medications he was taking, taking his medications without the proper amount of food in his stomach, and/or by choosing not to eat all. Furthermore, Plaintiff has not lost any weight and has not contacted food poisoning while detained at CCJ. Accordingly, Plaintiff has not presented any evidence that would give rise to a triable issue of fact as to whether the food services he received posed a substantial risk of serious harm.

## II. Plaintiff Cannot Satisfy the Subjective Element of the Constitutional Inquiry

The subjective component requires Plaintiff to demonstrate that prison officials acted with the requisite culpable state of mind. *See Wilson*, 501 U.S. at 302. This subjective component is satisfied if a prison official acts with deliberate indifference, *i.e.*, the official knows of and disregards an excessive risk of inmate health or safety. *See Farmer*, 511 U.S. at 837. Negligence and even gross negligence is insufficient to demonstrate deliberate indifference; instead, the defendant must have intended for the plaintiff to die or suffer grievously or knew of a significant risk that the plaintiff would suffer grievously but was indifferent to that risk. *See Rapier v. Harris*, 172 F.3d 999, 1006 (7th Cir. 1999); *Salazar v. City of Chicago*, 940 F.2d 233, 240 (7th Cir. 1991).

Plaintiff has failed to produce evidence of deliberate indifference. Plaintiff does not know who "tampered" with his food and has not demonstrated that anyone at Aramark or Sheriff

12

Dart was aware of his complaints regarding the food, let alone, that the issues Plaintiff had with his food service would have caused him to suffer grievously or pose a substantial risk that he would suffer grievously. Furthermore, the undisputed evidence shows that CCJ and Aramark had procedures in place to address detainee complaints and food service issues. It further shows that when Plaintiff filed a grievance, Aramark responded to the issue. Accordingly, Plaintiff has not presented any evidence that would give rise to a triable issue of fact as to whether the Defendants acted with deliberate indifference.

### III.     Government Custom or Practice

To the extent that Plaintiff's claim against Sheriff Dart is in his individual capacity, as noted above, there is no genuine issue of material fact that Sheriff Dart was personally involved in preparing or serving Plaintiff's meals. To the extent that Plaintiff sues Sheriff Dart in his official capacity, such claim is actually against Cook County. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985).

To prevail on a Section 1983 claim against a government entity, a plaintiff must demonstrate that an alleged constitutional right deprivation was caused by a policy, custom, or practice. *See Monell v. Department of Social Serv.*, 436 U.S. 658, 692 (1978). Unconstitutional policies or customs can take three forms: an express policy that, when enforced, causes a constitutional deprivation; a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a usage or custom with the force of law; or a constitutional injury that was caused by a person with final policy-making authority. *Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir.2000).

Plaintiff has failed to raise a genuine issue of material fact that Sheriff Dart's contracting with Aramark to provide food services at CCJ results in any constitutional violation. Nor has

Plaintiff offered any evidence to demonstrate a widespread practice or policy att CCJ or Aramark that placed Plaintiff in serious risk of harm. In addition, as discussed above, Plaintiff has failed to raise a genuine issue of material fact as to any constitutional injury. Accordingly, Plaintiff has failed to demonstrate a claim against Sheriff Dart in his official capacity.

## CONCLUSION

For the foregoing reasons, (1) Defendants' motion for summary judgment [58] is granted, (2) Plaintiff's "motion for petition to prosecute" [67] is denied, (3) Plaintiff's motion of dispositive motions [64] is stricken, (4) Defendants' motion to strike Plaintiff's motion of dispositive motions [68] is granted, and (5) Plaintiff's "motion in regarding to past and present filing of Local Rule Fed. R. Civ. P. 56(5)" [71] is denied.

DATED: October 25, 2010         ENTERED

_____
AMY J. STJEVE
United States District Court Judge

14